CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**ABILENE DIVISION**

2012 SEP 10 AM 10: 16

DEPUTY CLERK_____

|  |  |  |
|---|---|---|
| **LARRY D. FULLER,** | § | |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | Civil Action No. 1:11-CV-117-BL |
| | § | ECF |
| | § | |
| **MICHAEL J. ASTRUE,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | **Assigned to U.S. Magistrate Judge** |

## MEMORANDUM OPINION AND ORDER

**THIS CASE** is before the court upon Plaintiff's complaint filed 6, 2011, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act. On July 7, 2011, the United States district judge, pursuant to 28 U.S.C. § 636(b), reassigned this case to the United States magistrate judge for all further proceedings. Plaintiff indicated his consent to proceed before the United States magistrate judge on July 7, 2011 (Doc. 6). Plaintiff filed a brief in support of his complaint on February 1, 2011 and Defendant filed a brief on March 30, 2011. This court has considered the pleadings, the briefs, and the administrative record and finds that the Commissioner's decision should be reversed, that Plaintiff has shown disability, and that this matter should be remanded for an award of benefits.

## I.   STATEMENT OF THE CASE

Plaintiff filed an application for SSI benefits on December 23, 2003, with a protective filing date of December 5, 2003, alleging disability beginning July 1, 2003. Tr. 13, 60-62. Plaintiff's application was denied initially and upon reconsideration. Tr. 13, 21-26, 29-32. Plaintiff filed a Request for Hearing by Administrative Law Judge on July 20, 2004, and this case came for hearing before the Administrative Law Judge ("ALJ") on June 23, 2005. Tr. 13, 33-34, 179-201. Plaintiff, represented by a non-attorney, testified in his own behalf. Tr. 182-97. Carol Bennett, a vocational expert ("VE"), appeared and testified as well. Tr. 198-99. The ALJ issued a decision unfavorable to Plaintiff on July 29, 2005. Tr. 10-18.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act as of December 5, 2003. He found that Plaintiff had not engaged in substantial gainful activity at any time since July 1, 2003. Tr. 14. Plaintiff has "severe" impairments, including back problems, borderline intellectual functioning, alcohol abuse (in remission), and seizure disorder (by history). *Id.* Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.* Therefore, the ALJ was required to determine whether Plaintiff retained the residual functional capacity ("RFC") to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 16-17.

The ALJ found that based on the evidence in the record, Plaintiff's statements concerning his impairments and their impact on his ability to work were not entirely credible. Tr. 16.

The ALJ found that Plaintiff had no past relevant work. Tr. 17. He noted that Plaintiff was considered a "younger individual" with a limited formal education. 20 C.F.R. §§ 416.963, 416.964; Tr. 17.

The ALJ found that Plaintiff retained the RFC to perform the requirements of sedentary work activity, limited to jobs that do not require: stooping, crouching, crawling, kneeling, or climbing stairs and ramps more than occasionally; climbing scaffolds, ladders, or ropes; sitting without the opportunity to occasionally stand in addition to a lunch and the normal legal breaks during the workday; working at unguarded heights or near unguarded hazardous mechanical equipment; understanding, remembering, and carrying out more than simple instructions; reading; or working with money or doing math problems. Tr. 14-15. Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 17-18. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of assembler, with 105,000 jobs nationally; and production inspector, with 25,000 jobs nationally. *Id.* The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 18.

Plaintiff submitted a Request for Review of Hearing Decision/Order on September 15, 2005. Tr. 8-9. The Appeals Council denied Plaintiff's request and issued its opinion on October 18, 2005, indicating that although it had considered the contentions raised in Plaintiff's Request for Review,

-3-

it nevertheless concluded that there was no basis for changing the ALJ's decision. Tr. 4-7. The ALJ's decision, therefore, became the final decision of the Commissioner.

On March 22, 2007, the district court reversed the ALJ's decision and remanded the case to the Commissioner. On June 2, 2007, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. Tr. 216, 246-62, 264-67. On January 17, 2008, the ALJ held a supplemental hearing. Tr. 216, 292-314. Plaintiff, represented by a non-attorney, again testified in his own behalf. Tr. 296-306. Dr. John Simonds, a medical expert ("ME"), and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 307-13. The ALJ again issued a decision unfavorable to Plaintiff on March 13, 2008. Tr. 213-29.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act as of or after December 5, 2003, the date of his application. He found that Plaintiff had not engaged in substantial gainful activity at any time since July 1, 2003. Tr. 217. Plaintiff has "severe" impairments, including mild disc bulges at L3-4, L4-5, and L5-S1 of the lumbar spine, degenerative disc disease of the lumbar spine, slight scoliosis of the thoracic spine, a history of alcohol abuse, a history of seizures, borderline intellectual functioning, a provisional diagnosis of mild mental retardation, and a cognitive disorder not otherwise specified. Tr. 217-18. Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairment listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. Tr. 218. Therefore, the ALJ was required to determine whether Plaintiff retained the RFC to perform his past relevant work or other work existing in the national economy.

The ALJ acknowledged that in making the RFC assessment, he must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent

-4-

with the objective medical evidence and other evidence, based on the requirements of Social Security Ruling 96-7p. Tr. 226.

The ALJ found that Plaintiff could not return to his past relevant work as a carpenter helper. Tr. 228. He noted that Plaintiff was considered a "younger individual" with a limited education. 20 C.F.R. §§ 416.963, 416.964; Tr. 228.

The ALJ again found that Plaintiff retained the RFC to perform the requirements of sedentary work activity, limited to jobs that do not require: stooping, balancing, crouching, crawling, kneeling, or climbing stairs and ramps more than occasionally; climbing scaffolds, ladders, or ropes; sitting without the opportunity to occasionally stand in addition to a lunch and the normal legal breaks during the workday; working at unguarded heights or near unguarded hazardous mechanical equipment; understanding, remembering, and carrying out more than simple instructions; doing more than the lower-end of detailed instructions; reading; or working with money or doing math problems. Tr. 222. Having found that Plaintiff could not perform the full range of sedentary work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 228-29. He relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in significant numbers in the national economy, including the jobs of bench hand, with 105,000 jobs nationally; and document preparer for microfilming, with 117,000 jobs nationally. *Id.* The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 229.

On July 14, 2008, Plaintiff commenced a civil action seeking judicial review of the Commissioner's decision that Plaintiff was not disabled. The court entered an order adopting the

report and recommendation of the United States magistrate judge, reversing the decision of the Commissioner and remanding for further proceedings.   The Appeals Council remanded this case to the ALJ.   A supplemental hearing was held on December 2, 2010.   Tr. 452-478.   Plaintiff, represented by an attorney, testified in his own behalf.   Michael Driscoll, a vocational expert, and Dr. Simmons, a medical expert, also appeared and  testified.

On March 11, 2011, the ALJ entered his opinion. Tr. 318-225. The ALJ found that Plaintiff has not engaged in substantial gainful activity since July 1, 2008. Tr. 319.   The ALJ found that Plaintiff's "severe" combination of impairments include: mild disc bulges at L3-4, L4-5, and L5-SI of the lumbar spine; degenerative disc disease of the lumbar spine; slight scoliosis of the thoracic spine;  history of alcohol abuse;  history of seizures;  borderline intellectual functioning;  and provisional diagnoses of mental retardation and a cognitive disorder not otherwise specified.   Tr. 320. The ALJ found that Plaintiff's impairments, singularly or in combination, did not meet or equal in severity any section of the Listing of Impairments, 20 C.F.R. Pt 4, Subpt.P, App. 1. *Id.* The ALJ further found that Plaintiff retains the RFC to: lift and carry 20 pounds occasionally; lift and carry 10 pounds frequently; stand and walk about 6 hours during an 8-hour workday; sit about 6 hours during an 8-hour workday with the ability to alternative sitting and standing periodically to relieve pain or discomfort; should never climb ladders, scaffolds or rope; could only occasionally climb ramps or stair, balance, kneel, crouch, crawl, or stoop; and cannot work around excessive vibration, hazardous moving machinery, or unprotected heights;  with no manipulative, visual, or communicative limits. Tr. 327-28.   The ALJ further found that while Plaintiff was able to sustain work mentally, he can understand, remember, and carry out short, simple instructions, and could make judgments on short, simple work-related decisions; limited to only occasional public contact. Tr. 328.

The ALJ described Plaintiff's testimony at the three hearings held in this matter. Tr. 328-30. The ALJ described the medical evidence of record and the testimony of the ME. Tr. 330-334. The ALJ found that Plaintiff was unable to perform his past relevant work. Tr. 334. The ALJ relied upon the testimony of the VE, who indicated that a person with Plaintiff's RFC, age, education, and vocational history could perform work which existed in significant numbers in the national economy. Tr. 335. The ALJ thus concluded at step 5 of the sequential evaluation process that Plaintiff was not disabled. *Id.*

## II.   STANDARD OF REVIEW

An applicant may obtain a review of the final decision of the Commissioner by a United States district court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson*, 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or SSI, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial

gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson,* 309 F.3d at 271; *Newton,* 209 F.3d at 453. In this case the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 229.

### III.   DISCUSSION

Plaintiff claims that the ALJ erred by failing to apply the appropriate legal standard at step 3 of the sequential evaluation of disability to determine whether Plaintiff met the criteria of Section 12.05 of the Listing of Impairments.

The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Section 12.05 of the Listing of Impairments, dealing with mental retardation, defines this impairment as "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. This section indicates that presumptive disability under the Listing of Impairments is established "when the requirements in A, B, C, or D are satisfied." *Id.* The criteria of Section 12.05C include a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C. "A claimant must prove both of these conditions in order to meet his

burden under step three." *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (citing *Sullivan v. Zebley*, 110 S. Ct. 885, 891-92 (1990)). "The claimant must provide medical findings that support each of the criteria for the equivalent impairment determination." *Id.* (citing 20 C.F.R. § 404.1526(a)).

Section 12.00(A) describes the structure for evaluation of mental impairments under § 12.05 of the Listing of Impairments:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing.

*See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(A). Section 12.05 clearly provides that in order to meet the Listing criteria for mental retardation, a claimant's mental impairment must first satisfy the diagnostic criteria – that is, "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period . . . ." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05.

Plaintiff claims that he has met the requirements of Section 12.05C of the Listing of Impairments, with medical evidence demonstrating a provisional diagnosis of mild mental retardation supported by objective testing revealing a full scale and verbal IQ of 66. Tr. 147. This listing indicates that mental retardation may be shows with a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05C. Plaintiff argues that the regulations require that the finding at step 3 must be based on medical evidence. Plaintiff argues that the ALJ erred in finding that Plaintiff did not satisfy the burden of

proof requiring evidence demonstrating that Plaintiff manifested deficits in adaptive functioning during the development period, as described in Listing 12.05C.

The court remanded this case to the Commissioner twice; the Appeals council remanded this case to the ALJ twice. Further opportunities to develop the record resulted in hearings and testimony by Dr. Simonds. Although the Defendant's brief addresses the issue of whether the ALJ's determination that Plaintiff's combined impairment did not meet or equal Section 12.05 C of the Listing of Impairments in severity secondarily, this issue was the previous basis for remand by the court. Defendant argues that Plaintiff has failed to provide evidence demonstrating that he has met the diagnostic requirements of Listing 12.05 C.

Mental retardation is defined under the regulations as "a lifelong condition." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(B)(4). The Commissioner's *Programs Operations Manual System* (*"POMS"*),[1] describes the relationship of adaptive behavior to IQ scores. *See POMS* § DI 24515.056(D)(2). This section notes:

> The term "adaptive behavior" refers to the individual's progress in acquiring mental, academic, social, and personal skills as compared with other unimpaired individuals of his/her same age. Indicators of adaptive behavior include childhood development milestones (e.g., when did the individual first crawl, walk, tie shoes, feed/dress self, etc.), as well as educational and social achievements. The judgment of an MC [medical consultant] is necessary to affirm that adaptive behavior is consistent with IQ test results.

*POMS* § DI 24515.056(D)(2).

As the ALJ notes in his opinion, the medical evidence of record includes psychological consultations indicating "some IQ scores in the 60-70 range." Tr. 321. Both Dr. Osborn and Dr. Brown indicated a provisional diagnosis of mental retardation. Tr. 147, 287. Dr. Osborn noted that

---

[1]     The POMS may be found at the Social Security Administration Policy Information Site, located at : http://policy.ssa.gov/poms.nsf/partlist!OpenView.

current psychological testing "places the claimant in the mildly retarded range of intelligence," including a verbal IQ of 66, a performance IQ of 74 and a full scale IQ of 66. Tr. 147. Dr. Brown indicated a provisional diagnosis of mild mental retardation (opining that school records should be consulted). 286-87. Dr. Brown also indicated that upon testing, Plaintiff earned a verbal IQ of 72, a performance IQ of 68, and a full scale IQ of 67. Tr. 284.

Section 12.00(D)(6) further describes the role that intelligence tests play in evaluating mental retardation for a determination of presumptive disability, noting that "[t]he results of standardized intelligence tests may provide data that help verify the presence of mental retardation or organic mental disorder, as well as the extent of any compromise in cognitive functioning. However, since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(D)(6)(a). Thus, Plaintiff's IQ scores alone do not demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning." Plaintiff's IQ scores form a part of the data necessary to verify the presence of mental retardation but function as "only part of the overall assessment." *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(D)(6). However, the record is clear and the scores demonstrated with testing and the opinions of the consultative examiners is described by the ALJ in his opinion.

Defendant argues that Plaintiff failed to satisfy the diagnostic definition of mental retardation by failing to demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 CFR Pt. 404, Subpt. P, App. 1, § 12.05.

The DSM-IV highlights the importance of deficits in adaptive functioning, noting that "[i]mpairments in adaptive functioning, rather than low IQ, are usually presenting symptoms in individuals with Mental Retardation."[2] The DSM-IV also indicates that "Mental Retardation would not be diagnosed in an individual with an IQ lower than 70 if there are no significant deficits or impairments in adaptive functioning."[3]

In this matter, the ALJ does not specifically reject Plaintiff's IQ scores. Rather, the ALJ found in his opinion that the evidence does not suggest that Plaintiff has significantly subaverage general intellectual functioning with deficits in adaptive functioning that initially manifested in the adaptive period given activities and independent functioning for much of his adult life. Tr. 326. Plaintiff's IQ scores form a part of the data necessary to verify the presence of mental retardation but function as "only part of the overall assessment." *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(D)(6).

Clearly, an ALJ may properly consider the opinion of the ME with regard to Plaintiff's activities and work history. *Compare POMS*, § DI 24515.056(D)(2) with *Higgins v. Barnhart*, 288 F.Supp.2d 811, 819 (S.D. Tex. 2002) (citing *Villa v. Sullivan*, 895 F.23 1019, 1024 (5th Cir. 1990)) (finding that the claimant's ability to work as a housekeeper, despite her mental limitations, constituted additional *indicia* militating against a finding that her adaptive functioning was deficient to a degree that would be reasonably considered disabling). The *POMS* provides that "Listing 12.05C is based on a combination of an IQ score with an additional significant mental or physical impairment. The criteria for this paragraph are such that a medical equivalence determination would very rarely be required." *POMS* § DI 24515.056(D)(1)(c). In any case, § 12.00(D)(6) indicates that

---

[2]     *Id*. at 42.

[3]     *Id*.

the ALJ should consider the narrative report that accompanies the test results, which should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation. *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(D)(6).

The ALJ specifically found that Plaintiff's "prior work activity and his reported activities of daily living and abilities indicate that he has not had significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." Tr. 327. The ALJ noted that he had given "great weight" to the opinion of Dr. Simonds, the ME. Tr. 337.

The record demonstrates that the ME testified that Plaintiff's school records were "not very informative," having no IQ scores, and indicating Plaintiff's grades. Tr. 308. He testified that "you couldn't make a case really that he was mentally retarded based on the school records." *Id.* When asked about deficits in adaptive functioning by the VE, Dr. Simonds testified that Plaintiff has the ability to do activities of daily living. Tr. 309. He also indicated that the evidence indicated that Plaintiff socially functions fairly well, with some trouble understanding if he is getting the right change, because of his math skills. *Id.* The ME testified that he could not tell from the records whether Plaintiff was in resource classes while in school. Tr. 310. The record further indicates that Dr. Stephen M. Osborn, the psychological consultative examiner, opined that Plaintiff had a diagnosis of mild mental retardation, provisional, with functional intelligence likely placing him in the borderline intellectual range. Tr. 147. The second psychological consultative examiner, Dr. R. Scott Brown, also opined that Plaintiff's diagnosis was mild mental retardation, provisional with past history suggesting higher functioning. Tr. 287. Dr. Brown also noted that although scores indicated a question of whether past functioning was at a higher level, school records should be

consulted to determine whether any intellectual scores would be available given Plaintiff's report of being involved in resource classes.  Tr. 285.

Plaintiff notes that upon remand, his school records were obtained and indicated that he attended resource classes.  Tr. 281.  Plaintiff correctly notes that both Dr. Brown and Dr. Osborn found that Plaintiff experienced difficulties with reading, writing, and math skills.  Despite further development of the record, neither the second consultative psychological examiner nor the ME indicated an opinion as to whether Plaintiff manifested deficits of adaptive functioning during the developmental periods, specifically prior to age 22. The ALJ found, based on Plaintiff's "prior work activity, his reported activities of daily living, social function, and abilities, and the opinions of Dr. Simonds, the State agency medical consultants, Dr. Brown, and Dr. Osborn "that Plaintiff has not had significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period."  Tr. 327.

"The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is  most supported by the record."  *Muse*, 925 F.2d at 790 (citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).  The task of weighing the evidence is the province of the ALJ.  *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001).  The relative weight to be given these pieces of evidence is within the ALJ's discretion.  *Id.*

However, this finding once again relied heavily upon Dr. Simonds's testimony and the ALJ's finding that Plaintiff had not manifested deficits in adaptive functioning during the developmental period. Such testimony and finding was not based on any evidence specifically addressing adaptive functioning prior to age 22.   The testimony of Plaintiff at the third hearing indicates that Plaintiff was in special resource classes from the time he started school. Tr. 458. The ALJ and the testimony of the ME indicate that the evidence record does not contain any earlier IQ testing.  The ALJ's

finding that Plaintiff did not manifest deficits in adaptive functioning is not supported by substantial evidence in the record. The evidence of record as to Plaintiff's developmental period at the very least indicates Plaintiff's special education needs and the objective testing demonstrates his limited math and reading abilities, as well as IQ scores consistent with the requirements of 12.05 C. The ALJ's finding that Plaintiff's severe combination of impairments does not meet or equal section 12.05 C of the Listing of Impairments is not supported by substantial evidence. Plaintiff has met his burden of proof at step 3 and has identified medical signs and laboratory findings that support all criteria for a step 3 impairment determination.

Defendant further argues that the ALJ's RFC finding is supported by substantial evidence. However, because the step 3 finding is in error, this court does not reach the issue of the RFC finding.

This matter has twice been remanded to the Commissioner for further administrative proceedings. However, the evidence of record demonstrates that the ALJ erred at step 3 and that the criteria of Section 12.05 of the Listing of Impairments have been met. The evidence of record and the opinion of the ALJ demonstrate that any further remand for further administrative proceedings would not be appropriate and that presumptive disability has been established. Clearly, "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court finds no such conflicts in evidence. The court further finds that the evidence of record demonstrates that Plaintiff is disabled under Section 12.05 C of the Listing of Impairments. Plaintiff having shown that he is definitively disabled, a reversal of the decision of the ALJ and a remand to the Commissioner for an award of benefits is appropriate.

## IV. CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, the court finds that the Commissioner's decision is not supported by substantial evidence in the record and should be **REVERSED**, that evidence of record demonstrates that Plaintiff is disabled under Section 12.05 C of the Listing of Impairments, that Plaintiff is entitled to an award of supplemental security income benefits, and that judgment should be entered in favor of the Plaintiff.

**IT IS, THEREFORE, ORDERED** that the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent therewith.

A judgment in accordance with this Memorandum Opinion and Order shall be entered accordingly.

**SO ORDERED**.

DATED this 7th day of September, 2012.



**E. SCOTT FROST**
**UNITED STATES MAGISTRATE JUDGE**